Filed 7/22/26  P. v. Martinez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN JESUS MARTINEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B344483<br>(Super. Ct. No. KA073951)<br>(Los Angeles County) |

Appellant Juan Jesus Martinez appeals a denial of his request for resentencing after the court held a 2025 resentencing hearing.  (Pen. Code.[1] §§ 1172.1, 1172.75.)  In 2007, Appellant was convicted of second-degree murder (§ 187, subd. (a)) with jury true findings that he personally used a firearm and committed the charged firearm enhancements (§ 12022.53, subds. (b)-(d).  Appellant was also convicted of being a felon in possession of a firearm.  (§ 12021, subd. (a) (1).

---

[1] All statutory references are to the Penal Code.

The trial court sentenced Appellant to an aggregate prison term of 61 years to life. He received 15 years-to-life for murder, doubled to 30 years because of a prior strike (§ 1170.12, subd. (d), 25 years-to-life for the firearm use enhancement (§ 12022.53, subd. (d), five years for having a prior serious felony conviction (§ 667, subd. (a), and one year for a prior prison term enhancement. (§ 667.5, subd. (b).)

At the 2025 resentencing hearing, the trial court struck the one-year prior prison term enhancement and the five-year prior serious felony enhancement but declined to reduce the remainder of his sentence yielding a new aggregate sentence of 55 years to life.

We appointed counsel to represent Appellant on this appeal. After reviewing the record his counsel was unable to find any arguable issues to brief and she filed an opening brief under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). His counsel advised Appellant of his right to file a supplemental brief. Appellant filed a supplemental brief. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Appellant was a Basset Grande Street gang member. His cousin Jesse Rangel was an East Side Ontario Street gang member. Appellant told Rangel that he needed a "gun" because he "wanted to rob" Gilbert Lara because he heard he was sitting on ten pounds of methamphetamine.

Appellant had previously bought methamphetamine from Lara. On January 6, 2006, Appellant and Rangel went to Lara's house. Lara let them in. They followed him into the living room. They were discussing stereo equipment when Appellant shot Lara to death. They took stereo equipment and left the house.

2

The next day Roberta Acosta, Lara's finance, found Lara's body on the floor.

The deputy medical examiner determined that Lara died from a gunshot wound to be back of his head. His injuries were consistent with someone shooting him "at one foot away" with a .357 revolver.

After Appellant was arrested, he told police that he "smoked" Lara. He said, "I was a foot away from him and I shot him in the back of the head so he wouldn't see it coming . . ." "I took my own fuckin[g] home boy[']s life for nothing. For nothing, dude . . . I just flipped man."

Appellant was on parole at the time he murdered Lara. After a jury trial he was convicted of Lara's murder.

Appellant has been in prison since 2006. While in prison Appellant committed 23 rules violations. These included fighting eight times, assault with a deadly weapon and distribution of a controlled substance. In 2015, Appellant was convicted of assault by a state prisoner with great bodily injury to his victim. He received a 26 year consecutive sentence as a result of that conviction.

In October of 2023, Appellant's name was placed on a California Department of Corrections and Rehabilitation list of those eligible for resentencing pursuant to Senate Bill 483. The trial court appointed the public defender's office to represent him.

On November 25, 2024, Appellant filed a request for the trial court "to consider resentencing pursuant to Penal Code section 1172.1." He noted that he was 48 years old and his California static risk assessment (CSRA) was 1, the "best possible score on the CSRA." He has been in prison for 19 years since the age of 27. He also suffers from Meniere's disease which causes

3

vertigo, ringing in the ears and ear congestion. Appellant attached exhibits showing that he had completed a number of rehabilitation programs while in prison.

Appellant attached a report from psychologist Andrew P. Pojman who concluded that because of vertigo Appellant suffers from anxiety and experiences panic attacks. Because of vertigo Appellant is in a wheelchair and sleeps upright in a hospital bed. "His time in prison has resulted in his physical and psychological maturity." Appellant requested the trial court reduce his murder conviction to manslaughter and strike a prior strike.

The People filed an opposition. They claimed Appellant's one-year Penal Code 667.5 "allegation should be stricken by this court pursuant to" Penal Code section 1172.75. But "[g]iven the callousness of [Appellant's] actions in this case (including being on parole), his criminal history, and Rules Violation Reports, which include a new felony conviction for violence, no other reductions should be given by the court."

At the resentencing hearing the trial court struck the one year prior prison term enhancement and the five-year prior serious felony enhancement, but it declined to reduce the remainder of the sentence yielding a new aggregate sentence of 55 years to life. The court found his conduct before and after his murder conviction did not support striking a strike. For example, the court found that from 1998 "and forward" Appellant has "been either in prison or picking up new cases or both for that 27-year period . . ." It also considered the "brutality" of the facts of his murder conviction. It said, "I do find that you still pose a risk, notwithstanding your medical condition."

## DISCUSSION

Appellant claims the trial court erred by failing "to give proper weight to post-conviction rehabilitation," failing to consider that he suffers from Meniere's disease, and failed to exercise informed discretion. We are not persuaded.

In making sentencing decisions the trial court decides the weight to be given to the various factors, and it weighs the mitigating factors with the aggravating factors. (*People v. Bryant, Smith & Wheeler* (2014) 60 Cal.4th 335, 463.) In exercising its resentencing discretion the court may consider the defendant's criminal history, injury to victims, length of prior prison terms, remoteness of the crimes, and the defendant's disciplinary record in prison and rehabilitation while incarcerated. (*People v. Valencia* (2017) 3 Cal.5th 347, 354.) It also considers whether the defendant's age, time served and the defendant's diminished physical condition have reduced the defendant's risk for future violence. (§ 1172.1, subd. (a)(5).) The presumption in favor of resentencing may be overcome by the court's finding that the defendant poses an unreasonable risk to public safety. (§ 1172.1, subd. (b)(2).)

Here, Appellant claims the trial court should have made a greater reduction in his sentence by striking enhancements and a prior strike conviction. But in our view, Appellant has not shown an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)

Appellant claimed that his Meniere's disease meant that he would no longer be a threat to public safety. But the trial court did not find that claim to be credible. It noted that Appellant has had that disease since he was 19 years of age, since 1998. Even with that disease, the court found there was "the continuing

5

commission of violent offenses even prior to that date and after that date . . ." The court did not err by finding that Meniere's disease did not prevent Appellant from committing murder or committing violent acts in prison.

Appellant also claimed that while in prison he had completed rehabilitation classes, remained sober, and had a CSRA risk assessment of 1. The trial court said it considered that evidence. Appellant attached a completion certificate for a substance use disorder program. But that occurred only recently in 2024. He entered a Cognitive Behavioral Intervention-Life Skills Group. But again, that was also only a recent effort at rehabilitation. Appellant also completed an "ARC" program involving gang redemption. But that was in October of 2024.

The trial court could reasonably find this was not a showing of a long term sustained successful commitment to rehabilitation from the beginning of his sentence to the current time. It said, "perhaps with additional time free of violations, a sustained track record, it might be a different story . . . ."

Appellant additionally noted that in 2014 he completed a stand against violence program. But the next year Appellant assaulted an inmate with a shank causing serious bodily injury.

Moreover, the trial court reasonably weighed the rehabilitation evidence with the People's evidence of aggravating factors based on Appellant's long record of misconduct in prison and his violent criminal record. Appellant had a consistent long pattern of rules violations in prison between 2008 and 2023. These 23 violations included fighting eight times, assault with a deadly weapon, and distribution of a controlled substance. In 2015, Appellant was convicted of assault by a state prisoner with great bodily injury to his victim. He received a 26-year

6

consecutive sentence as a result of that conviction.  The trial court found that he had a 27-year history of being in prison or "picking up new cases" since 1998.  Appellant's criminal history before his murder conviction shows a pattern of committing violent crimes including a 1994 sustained petition for carjacking, a 1998 conviction for assault, a 2002 revocation of parole, a 2003 conviction for evading police.

The trial court also properly considered the "brutality" of Appellant's murder offense, his violent conduct in prison and his criminal history.  (*People v. Valencia, supra*, 3 Cal.5th 347, 354.) It could reasonably find that Appellant posed a danger to society based on his violence in prison and his substantial criminal record.  (*People v. Strother* (2021) 72 Cal.App.5th 563, 574.)

We have reviewed Appellant's remaining contentions and conclude he has not shown grounds for reversal.

DISPOSITION

The resentencing order is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

7

Robert Serna, Judge

Superior Court County of Los Angeles

_____

Laura Ruth Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.